**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

KENDALL WALKER,

                              Plaintiff,

         v.                                                      No. 9:18-CV-1189
                                                                 (BKS/CFH)

D. MARTUSCELLO, et al.,

                              Defendants.
_____

**APPEARANCES:**                              **OF COUNSEL:**

KENDALL WALKER
07-A-6883
Woodbourne Correctional Facility
99 Prison Road
P.O. Box 1000
Woodbourne, New York 14011
Plaintiff pro se

HON. LETITIA JAMES                            ERIK BOULE PINSONNAULT, ESQ.
Attorney General for the                      Assistant Attorney General
State of New York
The Capitol
Albany, New York 12224-0341
Attorney for Defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION & ORDER[1]

     Plaintiff pro se Kendall Walker ("Walker"), an inmate who was, at all relevant times, in

the custody of the New York Department of Corrections and Community Supervision

("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983.  Dkt. No. 1 ("Compl.").  Walker

contends that Defendants Superintendent D. Martuscello ("Martuscello"), Deputy

_____
     [1]     This matter was referred to the undersigned for report and recommendation pursuant to 28
U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Superintendent D. Barringer ("Barringer"), Chaplain Father G. Reddie ("Reddie"), Chaplain Dr. Ali ("Ali"), and John Doe ("Doe") deprived him of his constitutional rights under the First and Fourteenth Amendments.  See id.  Walker seeks declaratory, injunctive, and monetary relief.  See id. at 11.

## I.  BACKGROUND

### A.  Procedural History

On October 3, 2018, Walker commenced this action with the filing of a pro se civil rights complaint.  See Compl. In a Decision and Order filed on December 3, 2018 (the "December Order"), the Court reviewed the Complaint in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A, and directed Defendants to respond to the First Amendment free exercise claims and Fourteenth Amendment equal protection claims.  Dkt. No. 4.  In lieu of an answer, Martuscello, Barringer, and Reddie move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), to dismiss the Complaint.[2]  Dkt. No. 14.  Walker opposes the motion.  Dkt. No. 20.

### B.  Facts[3]

The facts are related herein in the light most favorable to Walker as the non-moving party.  See subsection II(A) infra.  At the relevant time, Walker was confined at Coxsackie Correctional Facility ("Coxsackie C.F.").  See generally, Compl.

---

[2]    As to defendant Ali, service has not been properly effectuated.

[3]    Walker annexed exhibits to his Complaint and to his opposition to the motion to dismiss. Dkt. No. 1-1; Dkt. No. 20-1. To the extent that the exhibits are relevant to the incidents described in the Complaint, the Court will consider any documents attached to the Complaint as exhibits.  See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) (concluding that the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated into it by reference).

### 1. Jumu'ah Services in 2015

In January 2015, Walker, who is a Muslim and practicing member of the Nation of Islam ("NOI"), arrived at Coxsackie C.F.  Compl. at 6, 7.  As Muslims, NOI members observe a weekly congregational prayer service called Jumu'ah[4] on Friday afternoons.  Id. at 6.  At the relevant time, Orthodox Muslims at Coxsackie C.F. were offered weekly Jumu'ah services, but NOI members were not.  Id.; Dkt. No. 1-1 at 14.  A 2013 Ministerial Services calendar Reddie prepared listed Jumu'ah services on Friday from 12:30 P.M. until 2:30 P.M. for "Muslim - Dr. Imam Ali".  Dkt. No. 1-1 at 14.  The calendar also included "NOI Class/Islamic Class" on Tuesday from 6:00 P.M. until 8:00 P.M. for "Nation of Islam - Father Reddie" under a separate heading.  Id.

In March 2015, Walker and another NOI inmate sent a letter to Barringer with various requests on behalf of the NOI community.  Compl. at 6; Dkt. No. 1-1 at 2-7.  Reddie was listed as copied on the letter.  Dkt. No. 1-1 at 7.  In the letter, the inmates noted that they previously discussed the issues with Reddie and that the NOI members "do not feel we are being treated fair and equal[.]" Compl. at 6; Dkt. No. 1-1 at 2.  In part, Walker wrote:

> The NOI community will [sic] like to observe a religious worship service and congregational prayer of Jumu'ah Friday as the whole Islamic world is observing.  The whole entire Islamic world of orthodox Muslims and, NOI, Muslims are practicing their Islamic worship through their belief and guidance of the, Holy Quran.  Jumu'ah Friday prayer is a ritual-tradition and practice by "ALL" Muslims worldwide.  Congregational prayer on Fridays is a very important part of the spiritual growth and development of the NOI.

Dkt. No. 1-1 at 4.

---

[4]        As Defendants note, the Complaint and exhibits contain various spelling of "Jumu'ah."  The undersigned will use the spelling "Jumu'ah" when referring to the services.

On June 19, 2015, Deputy Commissioner for Program Services Jeff McKoy ("McKoy")[5], responded to the March 2015 correspondence noting that "the Coordinating Chaplain is working with the NOI adherents to address religious needs" and directed NOI members to address future religious concerns to the Chaplain.  Dkt. No. 20-1 at 2-3.

In October 2015, Walker and other NOI inmates, filed a grievance (CX-18704-15) concerning the lack of Jumu'ah services for NOI members.  Compl. at 7; Dkt. No. 1-1 at 19. The inmates claimed that members of the NOI were being discriminated against because they were not being afforded daytime services.[6]  Dkt. No. 1-1 at 21.  On November 21, 2015, in response to "letters" regarding "day time Jumu'ah services," Martuscello notified the members of the NOI that "[the] Ministerial Services Religious Calendar makes no accommodation for, or reference to, a Jumu'ah Service for the NOI Community."  Compl. at 7; Dkt. No. 1-1 at 23.  On December 23, 2015, the Inmate Grievance Resolution Committee ("IGRC") accepted the grievance and advised that "Central Office approved NOI for congregate services on Friday mornings in the facility Chapel Annex, starting 1/8/16."  Id. at 25.

According to the NOI faith, Jumu'ah services must occur in the afternoon.  Compl. at 7. Walker appealed the IGRC decision, and on January 28, 2016, Martuscello denied the grievance and advised that "accommodations have been made for the 2016 calendar, and that the NOI faith will receive services in the facility Chapel Annex starting 1/8/16 from 8:30 - 9:30 A.M."  Id. at 21.

---

[5]  McKoy is not named as a defendant in this action.

[6]  The record does not include a copy of the grievance.

## 2. Saviours' Day - October 2015

On October 6, 2015, Walker and other NOI members were participating in their weekly Tuesday NOI class, preparing to observe a "holy day" that is "stated on the religious calendar, 'Saviours' Day' on October 7, 2015," when Reddie informed them that they would not be permitted to congregate in observance of the holy day.  Compl. at 6.  On October 13, 2015, Walker, and other NOI inmates, filed a grievance (CX-18698-15) concerning Saviours' Day.  Id.; Dkt. No. 1-1 at 15, 17.  Walker accused Reddie of violating "my right to practice a religious holy day" and noted that Saviours' Day "is recognized on the religious calendar for holy day[.]" Dkt. No. 1-1 at 15.  The IGRC responded, "Saviours' Day is a holy day [ ] noted on the facility events calendar" and that the "NOI was not afforded the opportunity to observe said holy day." Id. at 16.  The Central Office Review Committee ("CORC") issued a decision accepting the grievance, in part, noting that the observance of Saviours' Day was rescheduled for October 24, 2015, due to a lack of space.  Dkt. No. 1-1 at 17.  However, CORC conceded that the decision was made without properly notifying the Division of Ministerial, Family and Volunteer Services ("DMFVS").  Id.

## 3. NOI Class - December 15, 2015

In the March 2015 letter to Barringer, Walker complained about "frequent cancellations of the NOI classes" and explained, "[w]e have tried honestly and humbly to speak to our current Coordinating Chaplain, Father Reddie" who responded, "classes are cancelled because he is not present at the facility at the time of our classes[.]"  Dkt. No. 1-1 at 2-7.

On December 15, 2015, the NOI study class was canceled because Reddie was not in the facility.  Compl. at 7.  On December 18, 2015, Walker and other NOI inmates filed a

grievance (CX-18764-15) challenging the decision to cancel classes due to the lack of a staff facilitator.[7]  Id.; Dkt. No. 1-1 at 28.  On January 12, 2016, Martuscello issued a decision accepting the grievance in part, noting that the NOI faith "does have an inmate facilitator" and, "[a]s long as the inmate facilitator is available to attend the callout, NOI services will be allowed to proceed without a staff advisor present."  Dkt. No. 1-1 at 28.   On appeal, CORC affirmed Martuscello's determination.  Id. at 29.

### 4. Religious Showers and Timing of Jumu'ah Services

On January 15, 2016, Walker and other NOI inmates filed a grievance (CX-18787-16) claiming that their First Amendment religious rights were violated because they were denied showers before NOI services on Friday.[8]  Dkt. No. 1-1 at 31, 32.  Walker alleged that pre-service shower privileges were afforded to Orthodox Muslims.  Compl. at 7-8.  A memorandum dated March 9, 2012, and posted throughout Coxsackie C.F., permitted NOI members to shower before services.  Id. at 7; Dkt. No. 1-1 at 34.  The grievants also alleged that they were not provided with sufficient time for the religious services, and that the services must be held on Friday afternoon, not Friday morning.  Id.

After an investigation, Martuscello denied the grievance finding that, "[n]o inmate is entitled to a shower before religious services, and the time and duration of the NOI service is in accordance with both Central Office Ministerial Services ("COMS") guidelines and Directive 4202[.]"[9] Dkt. No. 1-1 at 32.  In May 2016, CORC issued a decision upholding

---

[7]  The record does not include a copy of the grievance.

[8]  The record does not include a copy of the grievance.

[9]  The relevant portion of Directive 4202 requires that all groups be afforded the designated accommodations.  Dkt. No. 1-1 at 16.

Martuscello's determination.  Dkt. No. 1-1 at 33.  CORC informed that "the facility consulted

with COMS prior to changing the religious service to one hour on Friday mornings," and,

further, that "inmates are not entitled to shower prior to religious services, however, it is

acceptable to wash the morning of the service."  Id. at 33.  CORC further noted that the

"3/9/12 memo from former DSS M. . . allowing NOI inmates to shower prior to services was

rescinded."  Id.

### 5.  Jumu'ah Service - May 27, 2016

On May 27, 2016, the NOI Jumu'ah service was "mysteriously" cancelled.  Compl. at 8.

On June 10, 2016, Walker and other NOI inmates, filed a grievance (CX-18973-16)

complaining that defendant John Doe refused to "call out" for the NOI Friday service on

May 27, 2016 but that defendant Doe "made accommodations" for the Orthodox Muslim

community to participate in congregation prayers.[10]  Id.; Dkt. No. 1-1 at 38-40.  The IGRC

accepted the grievance in part, and recommended that the "NOI be afforded the same

accommodations that were afforded to the Orthodox Muslim Community."  Dkt. No. 1-1 a

39.  In February 2017, CORC upheld the Superintendent's decision[11] noting that "due to the

sudden retirement of the facility Imam [Dr. Ali], the NOI Friday service callouts for 5/27/16

were inadvertently not submitted."  Compl. at 8; Dkt. No. 1-1 at 40.  CORC noted that a new

Iman was retained and that callouts would be made at 8:15 A.M. to ensure that NOI

members receive an hour of service in the Chapel.  Id.

---

[10]     The record does not include a copy of the grievance.

[11]     The record before the Court does not include any response or decision from the
Superintendent related to this grievance.

## II. DISCUSSION[12]

Walker alleges that: (1) Defendants violated his First Amendment right to religious freedom; and (2) Defendants violated his Fourteenth Amendment rights to equal protection. See generally, Compl.  Defendants move to dismiss the Complaint arguing: (1) Walker's constitutional claims related to alleged violations occurring before September 11, 2015, are time barred; (2) Walker's First and Fourteenth Amendment claims fail to state a cause of action; and (3) Walker failed to allege that Defendants were personally involved in alleged constitutional violations.  See generally Dkt. No. 14.

### A.  Legal Standard

When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, this "tenet . . . is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

To defeat a motion to dismiss or a motion for judgment on the pleadings, a claim must include "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550

---

[12]  All unpublished opinions the Court cites in this Report-Recommendation & Order have been provided to plaintiff.

U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct] ."));  see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . .") (citations omitted).

Still, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Twombly, 550 U.S. at 555 (citations omitted).  Although a complaint attacked under the standard set forth in Rule 12(b)(6) does not require detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (citations omitted).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations or arguments that the submissions themselves do not suggest that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law[.]

Triestman, 470 F.3d at 477 (internal quotation marks, citations, and footnote omitted); see

9

also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.") (internal citations omitted).

## B. Statute of Limitations

Defendants argue that Walker's claims related to the lack of Jumu'ah services from January 2015 until September 11, 2015, are barred by the applicable statute of limitations. Dkt. No. 14-1 at 8-9.  As the statute of limitations is an affirmative defense, on a motion to dismiss pursuant to such defense, "the defendant has the burden of demonstrating, based on the allegations in the complaint, that the claim is untimely."  Egan v. Kennedy, No. 04-CV-6626,  2008 WL 4647740, at *3 (W.D.N.Y. Oct. 17, 2008).  Although there is no statute of limitations provision in § 1983, 42 U.S.C. § 1988 provides that state law may apply if it is not inconsistent with the Constitution or federal law.  42 U.S.C. § 1988(a); Moor v. Cnty. of Alameda Cnty., 411 U.S. 693, 702–03 (1973).  The statute of limitations period applied to section 1983 claims brought in federal court in New York is three years.  See N.Y. C.P.L.R. § 214(5); Owens v. Okure, 488 U.S. 235, 249–50 (1989); Romer v. Leary, 425 F.2d 186, 187 (2d Cir. 1970).  Although state law provides the relevant limitations period, federal law determines when a section 1983 action accrues, which has been held to be the time "when the plaintiff knows or has reason to know of the harm."  Connolly v. McCall, 254 F.3d 36, 41 (2d Cir. 2001) (internal quotation marks omitted); see also Covington v. City of New York, 916 F. Supp. 282, 285 (S.D.N.Y. 1996) (internal quotation marks omitted) (same).  "Thus, in determining when the statute begins to run, the proper focus is on the time of the [wrongful] act, not the point at which the consequences of the act become painful."  Covington, 916

10

F.Supp. at 285 (quotation omitted).

"[T]he continuing violation doctrine is an 'exception to the normal knew-or-should-have-known accrual date.'" Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009). "The continuing violation doctrine provides that "[w]hen the plaintiff brings a Section 1983 claim challenging a discriminatory policy, commencement of the statute of limitations period may be the[n] delayed until the last discriminatory act in furtherance of the policy." Id. "To assert a continuing violation for statute of limitations purposes, the plaintiff must 'allege both the existence of an ongoing policy of [deliberate indifference] and some non-time-barred acts taken in the furtherance of that policy.'" Id. "Plaintiff bears the burden of establishing the applicability of the continuing violations doctrine." Isakov v. HASC Ctr., Inc., No. 17-CV-5775, 2018 WL 1114714, at *4 (E.D.N.Y. Feb. 27, 2018) (citation omitted).

Here, construing the Complaint liberally, with the "special solicitude" to the non-movant, Triestman, 470 F.3d at 477, dismissal of Walker's claims related to the lack of Jumu'ah services from January 2015 until September 11, 2015, based upon the statute of limitations, is not warranted.  On September 11, 2018, Walker submitted the Complaint and pleaded a pattern and practice of violations of his religious rights and discrimination against NOI members beginning in January 2015 and continuing throughout his incarceration at Coxsackie C.F.[13]  Compl. at 11.  In March 2015, Walker notified Barringer and Reddie that NOI members' religious beliefs were substantially burdened.  Id. at 6.  Walker continued to voice his complaints and concerns regarding NOI members' religious rights in grievances

---

[13]  Under the "prison mailbox rule," the date of filing is deemed to be the date that the prisoner-plaintiff delivered his complaint to a prison guard for mailing to the court, which is presumed to be the date that the complaint was signed.  Houston v. Lack, 487 U.S. 266, 276 (1988); Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2011) (citation omitted).

from October 2015 until June 2016.  See generally Dkt. No. 1-1.  Walker alleges that,

beginning in 2013, there was no congregational prayer service at Coxsackie C.F. for NOI

inmates, and, further, that Defendants were placed on notice of the religious violations and

"had an extensive amount of time to remedy the problem."  Compl. at 6, 7.   Walker also

maintains that his religious beliefs were violated for "a whole year" because he did not have

the opportunity to participate in weekly prayer.  Id. at 7.  Although the Complaint lacks facts

establishing when Walker was transferred out of Coxsackie C.F.,[14] construing the Complaint

liberally, the date for the "last discriminatory act" in furtherance of the practice and policy

appears to be May 27, 2016.  See Cancel v. Mazzuca, No. 01 CIV. 3129, 2003 WL

1702011, at *4 (S.D.N.Y. Mar. 28, 2003) (holding that, "in the absence of an argument by

the defendants that Mr. Cancel had been transferred from Fishkill to Franklin more than

three years prior to the filing of his complaint, we assume that the statute of limitations has

not elapsed under a 'continuing violation' theory.").   Thus, the Court cannot conclude, at this

stage in the litigation, that Walker's First Amendment claim related to the lack of Jumu'ah

service between January 2015 and September 11, 2015, is time barred.  See Williams v.

King, 56 F.Supp.3d 308, 326 (S.D.N.Y.), order clarified, 56 F.Supp.3d 389 (S.D.N.Y. 2014),

aff'd in part, vacated in part, 679 F. App'x 86 (2d Cir. 2017) (summary order) (rejecting the

defendants argument that First Amendment religious claims were time-barred because the

deprivations were part of a pattern or practice of discrimination with the last act occurring

within the three-year statute of limitations period)); see also Gomez v. Chill, No.

11-CV-6844, 2015 WL 1853110, at *13 (S.D.N.Y. Apr. 17, 2015), Report-Recommendation

---

[14]  At the time Walker signed the Complaint, he was incarcerated at Woodbourne C.F.  Compl. at 11.

adopted, 2015 WL 3862709 (S.D.N.Y. June 9, 2015) (rejecting the defendants' statute of limitations argument because the plaintiff alleged a continuing violation of his right to attend religious services beginning when he arrived at the facility).

At this juncture, Walker has alleged enough facts which, if true, could render his First Amendment claims related to the lack of Jumu'ah services from January 2015 until September 11, 2015 timely.  Accordingly, the undersigned recommends that Defendants' motion to dismiss claims related to the lack of Jumu'ah services from January 2015 until September 11, 2015 as time barred be denied.

### C.  Religious Claims

The First Amendment to the United States Constitution guarantees the right to free exercise of religion.  U.S. CONST. AMEND. I; Cutter v. Wilkinson, 544 U.S. 709, 719 (2005). The free exercise clause applies to prison inmates, subject to appropriate limiting factors. Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003) ("Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause.") (citing Pell v. Procunier, 417 U.S. 817, 822 (1974)).  This right is not absolute and can be limited due to the inmate's "incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security."  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citations omitted).  "The governing standard is one of reasonableness, taking into account whether the particular regulation . . . is reasonably related to legitimate penological interests." Benjamin v. Coughlin, 905 F.2d 571, 574 (2d Cir.1990) (citing Turner v. Safley, 482 U.S. 78 (1987)).

13

To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials furthers some legitimate penological objective.  Farid v. Smith, 850 F.2d 917, 926 (2d Cir.1988) (citations omitted). "[A] prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs."  Salahuddin v. Goord, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing Ford, 352 F.3d at 591).[15]  A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature.  Ford, 352 F.3d at 590.  A prisoner's sincerely-held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." Jolly v. Coughlin, 76 F.3d 468, 476–77 (2d Cir. 1996).

"[P]risoners have a constitutional right to participate in congregate religious services." Salahuddin v. Coughlin, 993 F.2d 306, 308 (2d Cir. 1993) (citations omitted).  Although the Second Circuit has accorded prison officials great deference in the administration and "responsibility of maintaining order in prisons, . . . prisoners should be afforded every reasonable opportunity to attend religious services, whenever possible."  Young v.

---

[15]    "[I]t is unclear whether the 'substantial burden' element of this test remains viable," Davis v. Williams, No. 3:16-CV-1981, 2017 WL 507213, at *2, n. 1 (D. Conn. Feb. 7, 2017), and the Second Circuit has expressed doubt whether a prisoner must make this threshold showing.  Holland v. Goord, 758 F.3d 215, 220 (2d Cir. 2014) ("It has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.") (internal quotation marks omitted); see also Williams v. Does, 639 F. App'x 55, 56 (2d Cir. 2016) (summary order) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs.") (citing Holland, 758 F.3d at 220-21). Nevertheless, as the Second Circuit has not explicitly rejected this standard, the undersigned will apply it for purposes of this motion.

Coughlin, 866 F.2d 567, 570 (2d Cir. 1989) (citations omitted).  Even though there is no

bright-line rule as to "the frequency with which missing religious services . . . becomes a

burden of constitutional significance, limits on an inmate's religious exercise which prevent

attendance at . . . services once a week or less have routinely been held not to compromise

a burden on religious exercise."  Simmons v. Adamy, 987 F.Supp. 2d 302, 309 (W.D.N.Y.

2013).  However, the Second Circuit has held that missing one service that is considered

"central or important to" the practice of religion may constitute a substantial burden.  See

Lombardo v. Freebern, No. 16-CV-7146, 2018 WL 1627274, at *12 (S.D.N.Y. Mar. 30,

2018) (citing Ford, 352 F.3d at 593-594) (finding that the plaintiff sufficiently alleged that

missing the Passover Seder was a substantial burden); see also Kravitz v. Annucci, No.

16-CV-8999, 2019 WL 1429546, at *5 (S.D.N.Y. Mar. 29, 2019) (finding, on a motion to

dismiss, that the plaintiff sufficiently alleged Shavuot's centrality or importance such that

missing even one service could constitute a substantial burden).

Defendants do not dispute that Walker's religious beliefs are sincerely held but argue

that the burden imposed upon Walker was de minimis, and, further, that Walker failed to

plead that he "could not accomplish the mandates of his particular religious beliefs" through

other means.[16]  Dkt. No. 14-1 at 11.

---

[16]      In support of dismissal, Defendants point out that Walker presents "nearly identical" claims to
claims asserted by another inmate in a separate action in this District.  Dkt. No. 14-1 at 3 (citing Cantey v.
Martuscello, No. 9:17-CV-0284 (LEK/CFH)).  In a Report-Recommendation & Order issued in Cantey on
October 10, 2018, the undersigned recommended granting the defendants' summary judgment motion and
dismissing the First Amendment claims related to the lack of Friday Jumu'ah services against Reddie, based
upon the lack of evidence of personal involvement.  Id.  The undersigned also recommended granting
summary judgment and dismissing the Fourteenth Amendment equal protection claims against Barringer and
Martuscello based upon lack of personal involvement.  Id.  On March 28, 2019, one week after Defendants
filed the within motion, the District Judge modified the October 2018 Report-Recommendation and Cantey
was permitted to proceed with his First Amendment free exercise claims against Reddie.  See Cantey v.
Martuscello, et. al., No. 9:17-CV-0284 (LEK/CFH), 2018 WL 8576602 (N.D.N.Y. Oct. 10, 2018), report and
recommendation adopted as modified, 2019 WL 1397006 (N.D.N.Y. Mar. 28, 2019) ("March 2019 Order").

### 1. Lack of Jumu'ah Services in 2015

Walker claims that Defendants violated his religious rights because NOI members were not provided with Jumu'ah services in 2015.  Compl. at 7.  In the Complaint, Walker explains that Jumu'ah is a congregational prayer service and that participation that is mandated for all Muslims every week, "especially on Friday afternoons."  Id. at 6.  Walker contends that he first requested Jumu'ah services for NOI members in a letter to Barringer and Reddie in March 2015 but also claims that he verbally communicated with Reddie regarding the implementation of services prior to that date.  Id.; Dkt. No. 1-1 at 2-7.  Additionally, on October 19, 2105, Walker filed a grievance related to the lack of services.  Dkt. No. 1-1 at 19, 21.  In response, the IGRC accepted the grievance.  Id. at 25.  Upon review, Martuscello conceded that there "was no accommodation for the NOI faith to have a daytime service in the 2015 DOCCS religious calendar" and noted that "the NOI faith will receive services" beginning on January 8, 2016. from 8:30 A.M. until 9:30 A.M. Id. at 21.  Walker argues that he did not participate in weekly congregation prayer service for "a whole year."  Compl. at 7; Dkt. No. 20 at 6.

At this juncture, drawing all reasonable inferences in Walker's favor and construing the Complaint liberally, with the special solicitude due to the pro se plaintiff, the Court finds that Walker's First Amendment claims against Martuscello, Barringer, and Reddie related to the lack of Jumu'ah services in 2015 cannot be dismissed at this stage.[17]  Accordingly, the

---

On April 9, 2019, the defendants filed a motion for reconsideration of the March 2019 Order.  Id., Dkt. No. 55.  The motion for reconsideration is currently pending before the District Judge.

[17]    Defendants cite to caselaw in support of their position that Walker failed to sufficiently plead that his free exercise was substantially burdened by the lack of Jumu'ah services in 2015.  See Graham v. Mahmood, No. 05 CIV. 10071, 2008 WL 1849167, at *3 (S.D.N.Y. Apr. 22, 2008); and Muhammad v. City of New York Dep't of Corr., 904 F. Supp. 161, 166 (S.D.N.Y. 1995).  It is important to note that, like Cantey,

undersigned recommends that Defendants' motion to dismiss on this ground be denied.

In the alternative, Defendants argue that Walker's First Amendment claims against Reddie related to the lack of Jumu'ah services in 2015 must be dismissed because Walker failed to "proffer admissible evidence" that Reddie was personally involved in the alleged violations.  Dkt. No. 14-1 at 15.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319,

---

which is before the Court on a Motion for Summary Judgment, the cases cited were in a different procedural posture than the case at bar.  Further, in Graham, the Court was presented with a summary judgement motion.  In Muhammad, the Court issued "Findings of Fact and Conclusions of Law" after a bench trial.

323–24 (2d Cir. 1986)).[18]

Construing Walker's allegations liberally, he claims that Reddie, after being informed of alleged constitutional violations, failed to remedy the wrong, which falls under the second Colon factor.  See Dkt. No. 20 at 6.  In support, Walker proffers copies of the letter he sent to Barringer and Reddie on behalf of the NOI community[19] and McKoy's response to the letter.[20]  Dkt. No. 1-1 at 2-7; Dkt. No. 20-1 at 2.  With respect to the March 2015 letter, the Second Circuit has held that,

> [a]t the pleading stage, even if [the plaintiff] had no knowledge or information as to what became of his Letter after he sent it, he would be entitled to have the court draw the reasonable inference–if his amended complaint contained factual allegations indicating that the Letter was sent to the Warden at an appropriate address and by appropriate means–that the [defendant] in fact received the Letter, read it, and thereby became aware of the alleged conditions of which [the plaintiff] complained.

Grullon v. City of New Haven, 720 F.3d 133, 141 (2d Cir. 2013).

Accordingly, under Grullon, although Walker fails to allege facts establishing where he forwarded the correspondence or by what means it was sent, construing the Complaint liberally and accepting all factual allegations in the Complaint as true, at this stage in the litigation, the undersigned concludes that Walker has sufficiently alleged personal

---

[18]    Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision has affected the five Colon factors which were traditionally used to determine personal involvement.  Pearce v. Estate of Longo, 766 F. Supp.2d 367, 376 (N.D.N.Y. 2011), rev'd in part on other grounds sub nom., Pearce v. Labella, 473 F. App'x 16 (2d Cir. 2012) (summary order) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five Colon factors); Kleehammer v. Monroe Cnty., 743 F.Supp.2d 175, 182 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster . . . ."); D'Olimpio v. Crisafi, 718 F.Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

[19]    Plaintiff sent this letter along with nonparty inmate facilitator Anthony Hill.  Dkt. No. 1-1 at 2-7.

[20]    The response is addressed to inmate Hill.  Dkt. No. 20-1 at 2.

involvement on the part of Reddie.  See Wilburn v. City of Albany, No. 1:13-CV-1452 (GLS/CFH), 2014 WL 2532477, at *3 (N.D.N.Y. June 5, 2014) (reasoning that, at the motion to dismiss stage, it is not a plaintiff's "burden to provide 'evidence' [. . .] [the plaintiff] is merely required to make plausible allegations which, if true, would support a claim[.]") (citation omitted).  Accordingly, it is recommended that Defendants' motion on this ground be denied.

### 2.  Timing of Jumu'ah Services

Defendants argue that the scheduling of Jumu'ah services in the morning, rather than the afternoon, does not constitute a substantial burden on Walker's religious beliefs.  Dkt. No. 14-1 at 13.  Walker explains "that all Muslims throughout the world have congregational prayer service on Friday afternoons."  Compl. at 7.  Therefore, Walker appears to assert that, although Defendants eventually scheduled Jumu'ah services for NOI members beginning in 2016, the infringement upon his rights continued because the services were in the morning rather than the afternoon.  Id.  At this juncture, drawing all reasonable inferences in Walker's favor and construing the Complaint liberally under the special solicitude due to the pro se plaintiff, the Court recommends denying Defendants' motion to dismiss Walker's First Amendment claims against Martuscello, Barringer, and Reddie related to the timing of Jumu'ah services.

### 3.  Cancellation of the May 27, 2016 Jumu'ah service

Defendants argue that the cancellation of one Jumu'ah service for NOI members does not support a First Amendment claim.  Dkt. No. 14-1 at 12.  Walker alleges that "[p]articipation in Jumu'ah service/congregational prayer service is considered central or

19

important to the Plaintiff's religious practice as a Muslim and a registered member of the NOI." Compl. at 6. Accordingly, at this juncture, the Court recommends denying Defendants' motion to dismiss Walker's First Amendment claims against Martuscello, Barringer, and Reddie related to the cancellation of the May 27, 2016 Jumu'ah service on this ground. See Johnson v. Doty, No. 15-CV-7823, 2019 WL 2137361, at *5 (S.D.N.Y. May 16, 2019) (finding allegations sufficient, at the "motion-to-dismiss stage," to establish that the Eid-ul-Adha service is a "central or important" part of the plaintiff's practice).

In the alternative, Defendants argue that this claim should be dismissed because Walker failed to plead facts suggesting that Defendants "had any involvement in the decision to cancel the class." Dkt. No. 14-1 at 16. Walker alleges that, "the cancellation of [the] May 27th, 2016 N.O.I. congregational prayer service was due to Defendant Dr. Ali's retirement" and further asserts that "Defendant 'John Doe,' with discriminatory intent [. . . ] deliberately did not accommodate the N.O.I. with congregation prayer service[.]" Compl. at 8.

The Complaint lacks any facts plausibly suggesting Barringer, Martuscello, and Reddie were directly involved in the decision to cancel services on May 27, 2016. Further, the Complaint is devoid of allegations suggesting Defendants' personal involvement based upon any of the five Colon factors. Rather, the Complaint indicates that John Doe made the decision solely based because he harbored "discriminatory intent." Compl. at 8. In opposition to Defendants' motion, Walker argues that, "it was [Father Reddie's] duty as Staff Advisor to make sure the NOI were properly accommodated for[.]" Dkt. No. 20 at 7.

As to Reddie, Walker does not allege that Reddie was at the facility when the decision was made to cancel Jumu'ah services, that he was aware of Doe's decision, or that Reddie

20

was Doe's supervisor.  As noted supra, although Walker sufficiently alleges that Reddie

was personally involved in the First Amendment violations related to the lack of Jumu'ah

services in 2015 and the timing of the services based upon the March 2015

correspondence, the Complaint lacks any facts suggesting that Walker made any

complaints or had any further communication with Reddie regarding his First Amendment

religious rights after the Jumu'ah services began in January 2016.

With respect to Barringer and Martuscello, in opposition to Defendants' motion, Walker

states that Martuscello and Barringer were present at the facility at the time of the incident,

"and one of these Defendants is John Doe."  Dkt. No. 20 at 7.  However, Walker has not

submitted an amended pleading substituting a named defendant for John Doe nor

identifying Martuscello or Barringer as this John Doe defendant.  Accordingly, the Court

recommends granting Defendants' motion to dismiss Walker's First Amendment claims

against Reddie, Martuscello, and Barringer related to the cancellation of the May 2016

Jumu'ah services based upon the lack of personal involvement.

#### 4.  Saviours' Day - October 2015[21]

Defendants claim that the rescheduling of one Saviours' Day event in October 2015

does not constitute a substantial burden on Walker's free exercise of his religion.  Dkt. No.

14-1 at 12.

Walker asserts that the birthday of "the Most Honorable Elijah Muhammad, the

Messenger of the Nation of Islam" is a "Holy Day on October 7, 2015" and "stated on the

---

[21]    Annexed to the Complaint are copies of grievance records related to a grievance (CX-18862-16) filed in March 2016 complaining that he was "mistreated" at a Saviors' Day event.  Dkt. No. 1-1 at 36. Walker does not make any claims related to that grievance and the grievance is not referenced in the body of the Complaint.  The undersigned does not believe that Plaintiff was referring to the October 2015 Saviours' Day.

religious calendar" as "Saviors' Day."  Compl. at 6.  Similarly, in the October 2015

grievance, Walker described Saviours' Day as a "holy day."  Dkt. No. 1-1 at 15.  In

response to the grievance, the IGRC and CORC repeatedly referred to Saviours' Day as a

"holy day."  Id. at 16, 17.  In opposition to the motion, Walker reiterates that Saviours' Day

is not a religious service, but a "central holy day of the NOI which is central and important

to the NOI faith."  Dkt. No. 20 at 4.

Construing the Complaint liberally and drawing all reasonable inferences in Walker's

favor, the Court finds that, at this juncture, Walker has sufficiently pleaded that Saviours'

Day was "central and important" to his faith, and, thus, the canceling/rescheduling of the

service was a violation of his First Amendment rights.  See Johnson, 2019 WL 2137361, at

*5 (finding that the importance of communal service was  "underscored by the allegations"

in the pleading including the fact that the plaintiff wrote numerous letters to religious and

administrative officials regarding the service). Accordingly, the undersigned recommends

that Defendants' motion to dismiss Walker's First Amendment claims related to the

October 2015 Saviours' Day event be denied.

### 5. Walker's Remaining First Amendment Claims

Construing the Complaint liberally, Walker also claims that Defendants violated his

First Amendment rights by (1) cancelling the December 15, 2015 NOI class; and (2)

denying religiously-mandated showers before Jumu'ah services.  Compl. at 7-8.

As discussed supra, missing one service that is not considered "central or important

to" the practice of religion does not constitute a substantial burden.  See, e.g., Lombardo,

2018 WL 1627274, at *12.  In the March 2015 letter, Walker complained about "frequent

cancellations of the NOI classes," but failed to provide any factual support, including when

22

and how often the classes were canceled.  Dkt. No. 1-1 at 2-7.  In the Complaint, Walker alleges that his religious rights were violated when the NOI class was canceled on one occasion, December 15, 2015.  Compl. at 7, 8.  Despite this conclusory assertion, Walker has not sufficiently pleaded how the "frequent" cancellation of the NOI class substantially burdened his ability to practice his religion because he has not set forth facts plausibly suggesting that the NOI Class was "central or important" to the practice of his religion. Accordingly, the Court recommends granting Defendants' motion to dismiss Walker's First Amendment claims related to the cancellation of NOI class in December 2015.[22]

A similar conclusion applies to Walker's contention that his First Amendment rights were violated when Defendants denied him showers before Jumu'ah services.  The Complaint lacks any facts plausibly suggesting that Defendants substantially burdened Walker's right to practice his religion when they refused to provide showers prior to Jumu'ah services.  Walker does not explain the significance of showering, as it relates to his religious beliefs or why the refusal to permit him to shower before services contradicts those beliefs.  Moreover, Walker has not specified how many times he requested, and was denied, a pre-service shower.  Simply put, Walker does not explain why Defendants' refusal to provide him with the opportunity to shower before Jumu'ah services created a substantial burden on his religion or that he was prevented, in other ways, from practicing

---

[22]     As the undersigned recommends dismissal of this claim based on the failure to state a claim, the undersigned declines to address Defendants' alternative argument regarding personal involvement.  See Guillory v. Haywood, No. 9:13-CV-01564 (MAD/TWD), 2015 WL 268933, at *20 (N.D.N.Y. Jan. 21, 2015) (recommending the dismissal of the plaintiff's supervisory liability claim where no underlying constitutional violation remains); Mills v. Luplow, No. 04-CV-00005(A)(M), 2009 WL 2606240, at *14 (W.D.N.Y. Mar. 31, 2009) ("[The plaintiff's] failure to protect and supervisory liability claims arise only from the conduct alleged in the first and second causes of action.  Therefore, to the extent I recommend that these claims causes of action be dismissed, I likewise recommend that [the plaintiff's] third cause of action be dismissed.").

his religion.  See, e.g., Alton v. Maryland Dep't of Pub. Safety & Corr. Servs., No. CIV.A. WMN-09-1311, 2011 WL 3607933, at *9 (D. Md. Aug. 15, 2011) (reasoning that absent "other allegations concerning a denial of Plaintiff's opportunity to practice his religion.  A single instance of denying Plaintiff an opportunity to take a shower is not a burden on his religious practice.")), aff'd, 467 F. App'x 241 (4th Cir. 2012) (summary order).   Further, plaintiff does not deny that he was permitted to "wash" before services nor does he explain why "washing" would be an insufficient substitute to a shower immediately before services. Accordingly, the Court recommends granting Defendants' motion to dismiss Walker's First Amendment claims related to the failure to provide NOI members with the opportunity to shower before services.[23]

### D.  Equal Protection

Defendants move to dismiss Walker's equal protection claims.  Dkt. No. 14-1 at 14. The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law.  U.S. CONST. AMEND. XIV, § 1.  Essential to that protection is the guarantee that similarly-situated persons be treated equally.  See City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  "To prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination."  Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005).

> [T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if such selective treatment was based on impermissible considerations such as race,

---

[23]    See n. 22, supra.

> religion, intent to inhibit or punish the exercise of
> constitutional rights, or malicious or bad faith intent to injure
> a person.

Vegas v. Artus, 610 F.Supp.2d 185, 209 (N.D.N.Y. 2009) (internal quotation marks and

citations omitted).

If an individual cannot "allege membership in [a protected] class, he or she can still

prevail in . . . a class of one equal protection claim." Neilson v. D'Angelis, 409 F.3d 100,

104 (2d Cir. 2005) (internal quotation marks and citations omitted). To successfully plead a

class of one claim, a plaintiff must show "that [he] [was] intentionally treated differently from

other similarly-situated individuals without any rational basis." Clubside, Inc. v. Valentin,

468 F.3d 144, 158-59 (2d Cir. 2006). Additionally, plaintiffs must establish an extremely

high "level of similarity between plaintiffs and the persons with whom they compare

themselves. . . ." Neilson, 409 F.3d at 104.

Here, construing the Complaint liberally and reading it to raise the strongest argument,

Walker claims that he was treated differently from similarly-situated Orthodox Muslims.

More specifically, Walker claims that Defendants "purposely" discriminated against NOI

members because the NOI community: (1) was not provided with the opportunity to observe

a weekly Jumu'ah service whereas Orthodox Muslims were allowed to participate in

Jumu'ah services weekly; (2) was not permitted to shower before services while Orthodox

Muslims were allowed to shower every Friday between 10:30 A.M. and 11:15 A.M. before

their congregational prayer services; and (3) NOI Jumu'ah service were cancelled on May

27, 2016, and, ". . . in contrast the Orthodox Muslim community was afforded to participate

in their congregational prayer service without any call-outs by Defendant John Doe."

Compl. at 6-8; Dkt. No. 20 at 4-6. At this juncture, Plaintiff sufficiently pleaded that

25

Defendants, motivated by impermissible considerations of religion, selectively treated him differently than other similarly situated inmates.  See, e.g., Lopez v. Cipolini, 136 F.Supp.3d 570, 591 (S.D.N.Y. 2015) (finding that the plaintiff adequately pleaded an equal protection claim because the pleading "suggests that while Plaintiff was prevented from attending religious service because of her hair and sexuality, the other prisoners in the male facility were not."). Based on the facts provided, these allegations, if proven true, arguably could state an Equal Protection violation.

Defendants cite Graham v. Mahmood, 2008 WL 1849167, in support of the argument that dismissal is warranted because the Complaint lacks facts related to the number of NOI inmates and Orthodox Muslim inmates.  See Dkt. No. 14-1 at 14.  However, in Graham, the Court was presented with a motion for summary judgment, not a motion to dismiss as in the case currently before the Court.  At this stage, Walker has set forth "further factual allegations" suggesting that NOI inmates and Orthodox Muslim inmates were "similarly situated."  See Jones v. Annucci, 16-CV-3516 (KMK), 2018 WL 910594, at *17 (S.D.N.Y. Feb. 14, 2018).  Defendants also rely on documents attached to the Complaint as evidence that "no inmates were guaranteed access to a shower before religious services."  See Dkt. No. 14-1 at 14.  However, based on the facts provided, and in absence of any affidavits or other evidence from Defendants supporting otherwise, it cannot be said that no reasonable fact-finder could conclude that Walker was treated differently from other similarly-situated inmates of other faiths.  See Kent v. New York, No. 1:11-CV-1533 (MAD/CFH), 2015 WL 1284824, at *4 (N.D.N.Y. Mar. 20, 2015) ("The law is well-settled that the Court may not consider such outside evidence when decision a motion brought pursuant to Rule 12(b)(6).").  Accordingly, it is recommended that Defendants' motion on this ground be

denied.  See Barnes v. Ross, 926 F. Supp.2d 499, 507 (S.D.N.Y. 2013) ("It may be that the facts are not as [the plaintiff] has pleaded - [. . . ] - but that is not the question currently before the Court on defendants' motion to dismiss.").

### III.  DEFENDANT CHAPLAIN ALI

The Court must address issues regarding service on Chaplain Ali and whether Walker has sufficiently pleaded that Ali was personally involved in the alleged constitutional violations.  Under Rule 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period.  Where, as here, a plaintiff has been authorized by the Court to proceed in forma pauperis pursuant to 28 U.S.C. § 1915, the United States Marshals Service is appointed to effect service of process of the summons and complaint on his behalf.  See FED. R. CIV. P. 4(c)(2) (Marshals Service must be appointed to serve process when plaintiff is authorized to proceed in forma pauperis); 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [in forma pauperis ] cases.").  Thus, once a plaintiff has identified the defendants, the Marshals Service must undertake to locate them and accomplish the service.  The Marshals Service is obligated to effect service of process in accordance with the Federal Rules of Civil Procedure and, if necessary, the Marshals Service must make multiple attempts at service.  See Armstrong v. Sears, 33 F.3d 182, 188 (2d Cir.1994) (holding that where a defendant refused to acknowledge Marshals Service's request for waiver under Rule 4(d), the Marshals Service must effect personal service under Rule 4(e), accord Hurlburt v. Zaunbrecher, 169 F.R.D. 258, 259 (N.D.N.Y. 1996); see also N.D.N.Y. L.R. 5.1(h) (stating that the U.S. Marshals Service is obligated to make personal service at a plaintiff's request if no acknowledgment is filed with the court).

27

However, "[a] party proceeding in forma pauperis is not relieved of all responsibility with respect to service." Jarvois v. Ferrara, No. 1:18-CV-3997, 2019 WL 3890130, at *3–5 (S.D.N.Y. Aug. 19, 2019) (citing Meilleur v. Strong, 682 F.3d 56, 63 (2d Cir. 2012) (holding that if a plaintiff proceeding IFP "chooses to rely on the Marshals to serve the relevant parties, and it becomes apparent that the Marshals will not accomplish this by the Rule 4(m) or court-ordered deadline, she must advise the district court that she is relying on the Marshals to effect service and request a further extension of time for them to do so.")).

Here, Walker was granted leave to proceed in forma pauperis and the Clerk of the Court issued a summons to Ali. Dkt. Nos. 4, 5. On March 4, 2019, Ali was served. Dkt. No. 12. On April 26, 2019, the Court received a letter from the New York State Attorney General's Office ("AGO") suggesting that service upon Ali was improper because he retired from DOCCS in 2016. Dkt. No. 18. At the Court's direction, the AGO attempted to locate Ali and, on May 24, 2019, the AGO advised that its efforts were unsuccessful. Dkt. No. 21. The AGO further advised that Ali had not requested that the AGO undertake legal representation of him in this action. Id. Pursuant to Valentin v Dinkins, 121 F.3d 72, 75–76 (2d Cir. 1997) (holding that a pro se litigant is entitled to assistance from the district court in identifying a defendant for service of process), on May 30, 2019, the Court directed the AG to provide documentation and an affidavit related to the efforts to locate Ali. Dkt. No. 22.

On June 12, 2019, the AG provided a status report with the requested information. Dkt. No. 23. On June 14, 2019, the Court issued an Order finding that the Acknowledgment of Service dated February 25, 2019, was erroneously executed as to Ali. Dkt. No. 24. The Court directed the AG to file Ali's address, under seal. Id. The Court further directed the Clerk of the Court, upon receipt of the address, to issue a summons and forward it, to the

28

Marshal for service upon Ali. Id.

On June 17, 2019, a summons was reissued to Ali. Dkt. No. 26. On August 8, 2019, the summons for Ali was returned "unexecuted." Dkt. No. 29. The Marshal indicated that he attempted service on "two sealed addresses." Id. On September 17, 2019, a summons was reissued to Ali. Dkt. No. 30. On October 16, 2019, the summons for Ali was returned "unexecuted" with the notation, "[n]o one home, locked steel door, entrance to multiple apartments, no names on mailboxes." Dkt. No. 32. To date, Ali has not been served and Walker has been notified of the Marshals' inability to effect service upon Ali. See Dkt. No. 19, 22, 24, 29.

The Court has provided ample assistance to Walker, with regard to service upon Ali, in accordance with Valentin v. Dinkins, and the Marshals service has made several attempts to serve Ali. Conversely, in the thirteen months that have passed since Walker filed the Complaint, Walker has not filed any request for an extension of time to serve Ali. Indeed, Walker has made no inquiries regarding the status of service upon Ali and does not address the issue in his opposition to Defendants' motion to dismiss.[24] At this time, the Court cannot conclude "that proper service may still be obtained." Jarvois, 2019 WL 3890130, at *3–5 (reasoning that "the Court is unaware of a viable location at which [the defendant] may be served.") (citation omitted). Moreover, even if Walker is able to serve Ali, the Court finds that Walker has failed to state a claim against Ali. As discussed supra, "[i]t is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the

---

[24] The undersigned acknowledges that the Motion to Dismiss was not filed on behalf of Ali.

29

alleged constitutional deprivation." <u>Grullon</u>, 720 F.3d at 138.  Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" <u>Austin v. Pappas</u>, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting <u>Bass v. Jackson</u>, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

Walker names Ali as a defendant in the caption of the Complaint and in the list of parties.  Compl. at 1, 3.  However, Walker does not attribute any of the alleged constitutional violations to Ali, and the Complaint lacks sufficient facts suggesting that Ali was personally involved in any alleged constitutional violations.  In the absence of factual allegations sufficient to plausibly suggest that Ali was personally involved in conduct that violated Plaintiff's constitutional rights, the Complaint fails to state a cognizable claim against him.  <u>See</u> <u>Cipriani v. Buffardi</u>, No. 06-CV-0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted); <u>see also</u> <u>Casino v. Rohl</u>, No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (dismissing complaint because the plaintiff had not adequately pleaded the defendant's personal involvement in any of the constitutional deprivations alleged in the pleading).

In light of the above, the Court recommends <u>sua</u> <u>sponte</u> dismissal of Walker's claims against Ali, without prejudice, for failure to comply with Rule 4(m) and for failure to state a claim.  <u>See</u> <u>Torres v. Carry</u>, 800 F.Supp.2d 577, 585 (S.D.N.Y. 2011) (finding that the plaintiff "failed to demonstrate even the most minimal level of diligence in ensuring that service was completed upon [the defendants].").

## IV.  CONCLUSION

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that Defendants' motion to dismiss based upon Fed. R. Civ. P. 12(b)(6) (Dkt. No. 14) be:

1. **GRANTED**, as to Plaintiff's First Amendment religious claims related to the cancellation of May 27, 2016 Jumu'ah service against Reddie, Martuscello, and Barringer based upon lack of personal involvement; and

2. **GRANTED**, as to Plaintiff's First Amendment religious claims related to the following, for failure to state a claim: (1) cancellation of the December 15, 2015 NOI class; and (2) failure to provide religiously-mandated showers before Jumu'ah services; and

3. **DENIED**, as to all remaining claims; and it is further

**RECOMMENDED**, that Plaintiff's claims against Defendant Ali be <u>sua</u> <u>sponte</u> **DISMISSED WITHOUT PREJUDICE** due to Plaintiff's failure to serve Defendant Ali and failure to state a claim against him, and it is further

**ORDERED**, that this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1( c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993) (citing <u>Small v. Secretary of Health and Human Services</u>, 892

F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.[25]

      Dated: December 9, 2019
      Albany, New York

                            Christian F. Hummel
                            U.S. Magistrate Judge

---

[25]  If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(C).